IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–03581–MDB

LISA C. GIBSON,

Plaintiff,

v.

ROCKY MOUNTAIN UFCW UNIONS & EMPLOYERS RETAIL AND MEAT PENSION PLAN,

Defendant.

---

**ORDER**

---

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (["Motion"], Doc. No. 21.) Plaintiff has filed a response in opposition (Doc. No. 25) and Defendant has replied in support (Doc. No. 26.) After reviewing the Motion, briefing, and applicable law, the Court **ORDERS** that the Motion is **GRANTED in part and DENIED in part**.

**SUMMARY FOR SELF-REPRESENTED PLAINTIFF**

The Court is dismissing all but one of your claims.

First, Claim 1 seeks review of the lump-sum requests, but that claim is time-barred. Claim 3 is a claim for breach of fiduciary duties, but you do not allege sufficient specific facts to support the conclusory contention that Defendant was imprudent and disloyal. Claim 4 also fails because you allege you were deprived of a full and fair review of the denial, but the denial letters

themselves show otherwise. Claim 5 fails because no amendment ever triggered application of the anti-cutback rule, and Claim 6 fails because Defendant's requests to you concerned substantive issues grounded in ERISA's requirements.

The Court allows Claim 2 to proceed, but only to the extent it alleges that the administrator failed to furnish a benefit statement, as required under ERISA § 105. Additionally, you must confer with Defendant to determine whether Zenith American Solutions should be added as a defendant to this suit, now that only one claim remains.

This is only a high-level summary of the Court's decision. The decision itself is set forth below.

## BACKGROUND

This is an Employee Retirement Income Security Act ("ERISA") action arising out of a dispute between Plaintiff, the alternate payee under a Qualified Domestic Relations Order ("QDRO"), and Defendant (or the "Plan"), the multiemployer pension plan that approved that order. (*See generally* Doc. No. 17.)

Plaintiff says she entered into a divorce decree on June 16, 2016. (*Id.* at ¶ 9.) The divorce decree incorporated a separation agreement awarding her 40% of her partner's pension with the Plan in exchange for relinquishing her interest in the marital home. (*Id.*) According to Plaintiff, after substantial back-and-forth with the Plan, the QDRO was approved on July 23, 2021. (*Id.* at ¶ 14 ("The QDRO awards Plaintiff 40% of the Participant's vested accrued benefit as of June 16, 2016.").)

Plaintiff alleges that, after the QDRO's approval, she made repeated written requests for required ERISA disclosures, benefit statements, actuarial calculations, valuation of her 40%

separate interest, distribution options, and governing Plan documents. (*Id.* at ¶ 15 (alleging seven separate requests for information).) Plaintiff contends that, despite her status as an "Alternate Payee" under the Plan, her requests were denied on "privacy" grounds and the inability to calculate her benefit because there was "no cash value." (*Id.* at ¶ 16.) Plaintiff alleges that Defendant then conditioned any valuation or calculation on her first applying to commence benefits, stating that calculations would not be requested from the actuary unless she applied. (*Id.* at ¶ 17.) Plaintiff further alleges that this position was inconsistent with Defendant's earlier attempt, in September 2021, to unilaterally place her into "pay status." (*Id.* at ¶ 18.)

At some point, Plaintiff apparently requested that the Plan pay her owed benefits as a lump-sum. (*Id.* at ¶ 19.) Plaintiff says that on October 5, 2021, this request was denied "on the basis that her [lifetime] benefit allegedly exceeded $1,000." (*Id.* at ¶ 20.) Plaintiff complains that this denial "failed to disclose the calculation or supporting documents," and "failed to cite Plan provisions, identify documents relied upon, provide information necessary to perfect the claim, or advise Plaintiff of her appeal rights." (*Id.* at ¶¶ 20–21.) Plaintiff appealed the denial, but on December 13, 2021, the Plan's Board of Trustees denied her appeal, "refusing a lump-sum distribution and failing to address Plaintiff's requests for valuation, actuarial calculations, and benefit statements." (*Id.* at ¶ 22.)

Plaintiff next alleges she submitted "another formal ERISA request" for "valuation, distribution options, retroactive benefit calculations, and updated plan documents" on February 12, 2025. (*Id.* at ¶ 23.) Plaintiff says the Plan responded by "introduce[ing] retroactive 'Add-On QDRO Procedures,'" and "assert[ed] that no calculation would be provided unless Plaintiff applied to commence benefits." (*Id.* at ¶¶ 24–25.)

Based on these allegations, Plaintiff asserts six claims under ERISA: (1) "enforcement of the approved QDRO and recovery of benefits due" under ERISA § 502(a)(1)(B); (2) "failure to provide required disclosures and documents" under ERISA §§ 104(b)(4) and 105; (3) "breach of fiduciary duty and equitable relief" under ERISA § 404(a); (4) "failure to provide a full and fair review" under ERISA § 503 and 29 C.F.R. § 2560.503-1; (5) "unlawful retroactive 'Add-On QDRO Procedures' and interference with vested QDRO rights" under ERISA § 204(g); and (6) "unlawful imposition of extra-statutory QDRO language and formatting requirements" under ERISA § 206(d)(3). (*Id.* at ¶¶ 28–51.)

Defendant moves to dismiss all claims. (Doc. No. 21.) Defendant first argues Claims 1, 5, and 6, are time-barred under a 180-day contractual limitations provision, and that they fail for lack of a benefits application. (*Id.* at 7–10.) Defendant also argues that Plaintiff fails to state any other claim for relief. (*Id.* at 10–24.)

**LEGAL STANDARD**

**I. Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on such a motion, a court accepts all well-pleaded facts as true and views the allegations in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). However, the plaintiff bears the burden of presenting a complaint with enough factual details to suggest entitlement to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v.*

*Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). Ultimately, courts assess "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**II. Self-Represented Plaintiff**

The Court is mindful that Plaintiff represents herself and thus affords her papers and filings a liberal construction. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the Court cannot and does not act as her advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

**I. Claim 1**

"Since ERISA does not 'specify a statute of limitations for filing suit under § 502(a)(1)(B),' ERISA-governed plans often specify a limitations period." *J.H. v. Anthem Blue Cross Life & Health Ins. Co.*, 137 F.4th 1147, 1150 (10th Cir. 2025) (quoting *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 102 (2013)) (internal citation omitted). "[R]easonable ERISA-plan limitations periods are enforceable, because an ERISA plan is nothing more than a contract, in which parties as a general rule are free to include whatever limitations they desire." *Id.* (cleaned up and internal quotation marks omitted) (quoting *Salisbury v. Hartford Life & Accident Ins. Co.*, 583 F.3d 1245, 1247–48 (10th Cir. 2009)).

Under the Plan, if a claim for benefits is denied, "no lawsuit or other action against the Plan or its Trustees may be filed after 180 days from the date of the [claimant] has been given written notice of the Trustees decision on his appeal."[1] (Doc. No. 23-2[2] at 100 (page XII-10, section 12.15).) According to Defendant, because the "Plan issued its final adverse determination concerning Plaintiff's request for a lump-sum distribution on December 13, 2021," any claim seeking review of that decision is time-barred. (Doc. No. 21 at 9.) Defendant contends Claim 1 seeks review of the lump-sum determination, and that claim is therefore time-barred. (*Id.* at 7.)

Plaintiff does not appear to argue that the 180-day deadline is unreasonable. (*See* Doc. No. 25 at 4–5.) Accordingly, for the purpose of resolving this Motion, the Court assumes that 180 days is a reasonable amount of time. *See J.H.*, 137 F.4th at 1150 (saying "Plaintiffs do not dispute the reasonableness of the Plan's limitations periods" before moving on to analyze a different issue regarding the Plan's limitation period). Plaintiff argues instead that the time limitation is not applicable because her claims do not challenge the lump-sum determination, only the allegedly improper disclosures.[3] (Doc. No. 25 at 4–5.)

---

[1] Plaintiff contends that the 180-day limitations period appears only in the Summary Plan Description and not in the Plan itself (Doc. No. 25 at 4), but that contention is mistaken: the Plan itself contains the 180-day provision at section 12.15. (Doc. No. 23-2 at 100.)

[2] This document is the Rocky Mountain UFCW Unions & Employers Retail and Meat Pension Plan, which is an exhibit to the Motion. (*See generally* Doc. No. 23.) This document is central to Plaintiff's claims. And though Plaintiff mistakenly argues that the 180 day provision is only found in the Plan summary (*see supra* at n. 1) she does not appear to dispute the Plan document's authenticity. Accordingly, the Court takes judicial notice of the document and considers it herein. *See Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

[3] Plaintiff seems to argue in the alternative that the 2021 letter is "irrelevant" because Defendant continued to refuse valuation and disclosures through 2024 and 2025. (Doc. No. 25 at 4.) However, this argument is underdeveloped and unpersuasive.

Plaintiff's argument is at least partially belied by her Amended Complaint. In Claim 1, Plaintiff expressly seeks an order requiring Defendant to "calculate, value, and pay" Plaintiff's benefit. (Doc. No. 17 at ¶ 32.) Similarly, the Prayer for Relief says that "[i]f the Plan unambiguously precludes a lump-sum distribution," the Court should order a Plan-authorized alternative delivering "the economic equivalent of Plaintiff's awarded interest" in the benefit. (*Id*. at ¶ 54.) In essence, these are requests to overturn the lump-sum determination and order a payout. Thus, Claim 1 is subject to the Plan's 180-day limitations period, which ran prior to the initiation of this suit in November 2025. (*See* Doc. No. 1.)[4]

**II. Claim 2**

In Claim 2, Plaintiff alleges that Defendant violated ERISA §§ 104(b)(4) and 105 by failing to furnish required disclosures, benefit statements, and an actuarial valuation of her separate interest in response to her written requests. (Doc. No. 17 ¶¶ 33–38.) Defendant argues that Plaintiff fails to state a plausible claim because her allegations are contradicted by the documents attached to her own pleading.[5]

[4] Defendant also challenges Claims 5 and 6 as time-barred, but those claims do not appear to challenge to the lump-sum determination. Claim 5 challenges the "Add-On QDRO Procedures" that Plaintiff alleges Defendant introduced in 2025 (*id.* at ¶¶ 47–49), and Claim 6 challenges Defendant's alleged rejection of seven proposed QDROs between April 2020 and June 2021 on the basis of allegedly extra-statutory formatting and language requirements (*id.* at ¶¶ 50–51). Neither claim explicitly or implicitly requires review of the lump-sum determination. Thus, the Court will not dismiss Claims 5 and 6 as time-barred and instead considers Defendant's alternative arguments, below.

[5] Defendant also argues that the Plan's administrator, not the Plan itself is the proper defendant for this claim. This argument is somewhat curious. On the one hand, the argument is legally correct. By their own terms, the obligations imposed by ERISA §§ 104 and 105 run against the "administrator." *Averhart v. US WEST Mgmt. Pension Plan*, 46 F.3d 1480, 1490 (10th Cir. 1994) (saying that when an ERISA claim is connected to "requests from plan participants and beneficiaries," "the statutory liability for failing to provide requested information [sits] with the designated plan administrator, not with the employer or its other employees" (cleaned up)

ERISA § 104(b)(4) requires the administrator of an employee benefit plan, "upon written request of any participant or beneficiary," to "furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Furthermore, and as relevant here, ERISA § 105 requires the administrator of a defined pension benefit plan to furnish a benefit statement to a participant or beneficiary "upon written request," limited to one such request in any twelve-month period. 29 U.S.C. § 1025(a)(1)(B), (a)(3). "If a Plan Administrator fails or refuses to comply with a request for any information from a plan participant or beneficiary within 30 days after receipt of such request, the Plan Administrator may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal[.]" *R.L., v. Aetna Life Insurance Company, et. al,* 2026 WL 2168881, at *13 (D. Utah July 28, 2026)

---

(quoting *Jones v. UOP,* 16 F.3d 141, 145 (7th Cir. 1994)). On the other hand, it is not entirely clear to the Court who the administrator is in this case. The Summary Plan Description attached to Defendant's Motion (Doc. No. 23-1) says:

> ***Plan Sponsor And Plan Administrator:***
> Board of Trustees of the Rocky Mountain
> UFCW Unions & Employers
> Retail and Meat Pension Plan
> c/o Zenith American Solutions

(Doc. No. 23-1 at 45.) Moreover, Plaintiff's response insists the Plan is the proper defendant (Doc. No. 25 at 7–10) and the Plan's reply does not address the issue (*see* Doc. No. 26 at 6.) Regardless, assuming Zenith American Solutions *is* the proper defendant to this claim, this issue seems to be easily cured by an amendment to the operative Complaint adding or substituting Zenith as a Defendant. Because the Court will allow part of this claim to proceed, the parties will be directed to confer on this issue.

(cleaned up) (quoting 29 U.S.C. § 1132(c)(1)(B)); *see Murphy v. Verizon Commc'ns, Inc.*, 587 F. App'x 140, 141 (5th Cir. 2014).

Here, Plaintiff makes two allegations of non-disclosure. First, Plaintiff says the Plan failed to provide an actuarial valuation of her separate interest. But ERISA § 104(b)(4) does not require an administrator to generate a benefit-specific actuarial calculation on request. The statute requires an administrator to furnish existing, enumerated plan instruments. Moreover, here, the Plan repeatedly explained why a final, definitive valuation could not be calculated, but they still provided her with an approximation of her monthly share. (Doc. No. 17-12.)

Second, Plaintiff broadly claims that the Plan failed to provide any of the required disclosures. (*See* Doc. No. 17 at ¶¶ 33–34 (saying "Defendant failed and refused to furnish" "required ERISA disclosures, benefit statements, and actuarial valuation of her vested separate interest[.]").) Not so. The exhibits attached to the Amended Complaint demonstrate Plaintiff *was* provided certain ERISA disclosures. (*See* Doc. No. 17-7 at 2 (showing an email in which Plaintiff was sent the full Plan Document on October 12, 2021); Doc. No. 17-12 (showing the Plan's letter responding to Plaintiff's February 12, 2025, information request).) A plaintiff "cannot survive a motion to dismiss merely by pointing to allegations refuted by the documents on which those allegations are based." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1151 (10th Cir. 2023).

Still, the exhibits suggest that the administrator *may* have improperly withheld a benefit statement requested under ERISA § 105. (Doc. No. 17-7 at 1.) Plaintiff attaches an email showing she requested a benefit statement on October 24, 2021, but was told she could not receive such a statement because she was an "Alternate Payee" under the Plan and not a Plan

"participant." (*Id.*) However, per ERISA § 206(d)(3)(J) a person who is an alternate payee under a qualified domestic relations order "shall be considered for purposes of any provision of [ERISA] a beneficiary under the plan." 29 U.S.C. § 1056(d)(3)(J); *see Moon v. Rush*, 69 F. Supp. 3d 1035, 1042 (E.D. Cal. 2014) ("The ERISA statutory definition of 'beneficiary' includes a person who is an alternate payee under a qualified domestic relations order." (cleaned up, internal quotation marks omitted)). Moreover, section 105's obligation runs not only to "participants" but also to "beneficiaries." 29 U.S.C. § 1025(a)(1)(B)(ii) ("The administrator of a defined benefit plan ... shall furnish a pension benefit statement ... to a participant or beneficiary of the plan upon written request."). Because the Plan approved Plaintiff's QDRO on July 23, 2021, Plaintiff was an alternate payee—and therefore a beneficiary—when she requested a benefit statement on October 24, 2021.

Defendant contends that Plaintiff received an explanation as to why she could not be provided with a benefit statement. (*See* Doc. No. 21 at 16.) That may be so, and the explanation could form a defense to the alleged ERISA violation, but at this stage it is insufficient to warrant dismissal. Plaintiff has alleged enough in Claim 2 to state a plausible claim that the administrator failed to furnish a benefit statement required under ERISA § 105. Claim 2 shall be allowed to proceed in this respect, and shall be dismissed in all other respects.

**III. Claim 3**

In Claim 3, Plaintiff alleges that "Defendant and its fiduciaries" breached their "duties of loyalty and prudence" under ERISA § 404(a) by obstructing her access to vested separate interest, withholding a valuation calculation and benefit information, mischaracterizing her disclosure rights as an alternate payee, and imposing conditions "favoring administrative

convenience" over her rights. (Doc. No. 17 at ¶¶ 39–41.) Plaintiff seeks equitable relief pursuant to ERISA § 502(a)(3). (*Id.* at ¶ 41.)

Defendant argues that Plaintiff has failed to state a claim for relief. (Doc. No. 21 at 19–21.) To state a claim for breach of fiduciary duty under ERISA § 404(a), Plaintiff must plausibly allege that Defendant "was a fiduciary of the plan, was acting in that capacity, and breached a fiduciary duty." *In re Westar Energy, Inc., ERISA Litig.*, 2005 WL 2403832, at *3 (D. Kan. Sept. 29, 2005). A breach of the duties of loyalty and prudence requires factual allegations from which the Court can plausibly infer that the fiduciary failed to act "solely in the interest of the participants and beneficiaries," ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), or failed to act with "the care, skill, prudence, and diligence" that a prudent fiduciary would use under the circumstances, ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

Plaintiff's allegations do not meet that standard. She says, "Defendant and its fiduciaries" breached their duties of loyalty and prudence by "obstructing" her access to her interest, "withholding" information, "mischaracterizing" her disclosure rights, and "imposing conditions favoring administrative convenience." (Doc. No. 17 ¶¶ 39–41.) But these allegations are stated at a level of generality that does not permit a plausible inference of disloyalty or imprudence. And nowhere in the Amended Complaint does Plaintiff allege specific facts to support the contentions that Defendant was reckless or acted to advance its own interest at Plaintiff's expense. To the contrary, the exhibits Plaintiff incorporates into her pleading reflect that Defendant furnished her with the governing Plan document, provided approximations of the participant's accrued benefit and her corresponding share, and explained in writing why a final actuarial valuation could not be prepared absent an application fixing the variables necessary to calculate it. (Doc. Nos. 17-7;

17-12.) These exchanges do not reflect the disloyal or imprudent administration that a breach of fiduciary duties claim requires.

Finally, to the extent Plaintiff relies on the failure to disclose claim under ERISA § 105 to form the basis of a breach of fiduciary claim, that is insufficient. The furnishing of a statutorily required benefit statement is a ministerial reporting function, not the exercise of the discretionary authority that implicates considerations of loyalty and prudence. *See Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1184 (10th Cir. 2016) ("[C]alculating and reporting pension benefits, without more, does not establish fiduciary status under ERISA."). The Plan's failure in that respect is at most a technical violation of a discrete disclosure obligation, not an allegation of self-dealing. Standing alone, and against the backdrop of the information Defendant *did* provide (as described in and attached to the Amended Complaint), the allegations are insufficient to state a breach of the fiduciary duties of loyalty and prudence.

## IV. Claim 4

In Claim 4, Plaintiff alleges that Defendant violated ERISA § 503 and its implementing regulation, 29 C.F.R. § 2560.503-1, by denying her a full and fair review of her 2021 claim for lump-sum benefits. (Doc. No. 17 at ¶¶ 42–45.) Defendant moves to dismiss on the ground that the two letters facially complied with ERISA § 503 and its implementing regulations, and that Plaintiff's characterizations of them are contradicted by the documents she attached to her own pleading. (Doc. No. 21 at 21–24.)

ERISA § 503 requires an employee benefit plan administrator to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial," and to "afford a reasonable

opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Additionally, the implementing regulation provides that an adverse determination must set forth, in a manner calculated to be understood by the claimant: (i) the specific reasons for the determination; (ii) reference to the specific plan provisions on which it is based; (iii) a description of any additional material or information necessary to perfect the claim and an explanation of why it is necessary; and (iv) a description of the plan's review procedures and applicable time limits, including a statement of the claimant's right to bring a civil action. 29 C.F.R. § 2560.503-1(g).

Plaintiff contends that the Plan's October 5, 2021 denial letter and the Board of Trustees' December 13, 2021 decision on appeal were procedurally deficient because they failed to cite the specific Plan provisions on which the denials were based, failed to identify the documents relied upon, failed to describe the information necessary to perfect her claim, and failed to advise her of her appeal and review rights. (*Id.*) But those characterizations are contradicted by the letters themselves, which Plaintiff attached to her Amended Complaint.

The October 5, 2021, letter sets forth the specific reason for the denial: Plaintiff sought her benefit in the form of a lump-sum, and a lump-sum is unavailable unless the present value of the benefit does not exceed $1,000, which the Plan's actuary had determined was not the case. (Doc. No. 17-9 at 1.) It cites the specific governing provision—Plan section 7.12—and further addresses Plaintiff's related inquiries regarding a CARES Act distribution and an IRA rollover. (*Id*. at 1–2.) It then describes the review procedure, advises Plaintiff that she can file a written

notice of review with the Board of Trustees, gives her the address, a sixty-day deadline, and a description of what the notice must contain. (*Id*. at 2.)

The December 13, 2021, letter issued by the Board of Trustees on Plaintiff's appeal, likewise sets forth the reason for the determination and quotes the controlling Plan language governing lump-sum payments, including the $1,000 present-value condition and the cross-referenced provisions used to determine present value. (Doc. No. 17-10.) It advises Plaintiff that she may examine or obtain copies of pertinent Plan documents, states that the decision is the final decision of the Board, and expressly informs Plaintiff of her right to bring a civil action under ERISA § 502(a). (*Id*.)

In short, the letters provided Plaintiff the reasons for the denial, the specific Plan provisions on which it rested, a description of the review process, and a final decision informing her of her right to sue. That is what ERISA § 503 requires. Accordingly, Claim 4 fails to state a claim for relief.

**V. Claim 5**

In Claim 5, Plaintiff alleges that Defendant violated ERISA's anti-cutback rule, § 204(g). (Doc. No. 17 at ¶¶ 46–49.) She contends that after the QDRO was approved and her interest vested, Defendant thereafter introduced retroactive "Add-On QDRO Procedures" in 2025 and conditioned the valuation and calculation of her interest on her first applying to commence benefits—conditions she alleges unlawfully diminish and obstruct her vested QDRO rights. (*Id.*) Defendant moves to dismiss on the ground that Plaintiff identifies no Plan amendment reducing a protected benefit, and that the challenged conduct amounts to routine benefit administration. (Doc. No. 21 at 10–12.)

ERISA § 204(g), the scheme's anti-cutback provision, provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan[.]" 29 U.S.C. § 1054(g)(1). The rule is triggered by a plan amendment: it protects benefits that a participant has already earned, from being diminished by a subsequent change to the plan's terms. *See Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004).

Plaintiff's anti-cutback claim fails at the threshold because she does not allege the conduct the rule prohibits. The Amended Complaint does not identify any amendment to the Plan adopted after the July 23, 2021 approval of her QDRO, let alone an amendment that reduced her accrued benefit or eliminated an optional form of benefit. Instead, Plaintiff appears to contend that something in the Plan's letter or attached documents constituted new procedures that ate away at her vested benefits. (*See generally* Doc. Nos. 17 at ¶ 49; 17-11; 17-12 (attaching the Plan's February 24, 2025, response to her request for a valuation of her benefit, information about her distribution options, and Plan documents.).) But nothing in the Amended Complaint identifies the supposedly new procedures let alone how they reduced Plaintiff's vested benefit. Accordingly, this claim also fails.[6]

**VI. Claim 6**

In Claim 6, Plaintiff says Defendant violated ERISA § 206(d)(3) by imposing extra-statutory qualification requirements on her domestic relations order. (Doc. No. 17 at ¶¶ 50–51.) Specifically, she alleges that between April 2020 and June 2021, Defendant required her to

[6] To the extent Claim 5 also invokes ERISA § 206(d)(3), it adds nothing. Plaintiff's separate interest arises under the QDRO framework, but § 206(d)(3) supplies no independent cause of action for the conduct Plaintiff challenges here. Thus, the theory rises and falls with her anti-cutback allegations, which fail for the reasons stated.

submit seven separate court-signed orders, rejecting each until she adopted "plan-preferred" wording and formatting beyond what ERISA requires. (*Id.*) But the correspondence Plaintiff attaches to her Amended Complaint shows that the Plan raised *substantive* shortcomings, including: (1) that the draft orders erroneously described the Plan as a defined contribution plan and included account-based provisions inapplicable to a defined benefit plan (*id.* at 16), (2) that the proposed orders called for an immediate lump-sum distribution that the Plan does not offer (*id.* at 5, 9–10, 16–17), and (3) that the benefit-commencement provisions did not comply with the law or were unclear (*id.* at 1, 4, 5, 10, 14, 16). In other words, Defendant's demands were not unreasonable, arbitrary, formatting requests; they were substantive requests tethered to ERISA requirements. There is no factual basis for a claim.[7]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 21) is **GRANTED in part and DENIED in part**. Plaintiff's claims are dismissed **with prejudice**, except for Claim 2, but only to the extent it is predicated on the alleged failure to provide Plaintiff with a benefit statement pursuant to ERISA § 105.

**ORDERED** that the parties are directed to confer and determine whether Plaintiff is required to add Zenith American Solutions as a defendant to this suit. The parties shall submit a joint status report detailing the results of this conferral by **October 19, 2026**.

Dated this 28th day of September, 2026.

[7] Moreover, Plaintiff does not plausibly allege any injury arising from the qualification process. The Plan approved Plaintiff's QDRO on July 23, 2021. (Doc. No. 17 at ¶ 14.) Plaintiff does not allege the Plan unreasonably refused to approve her QDRO or that the revisions she was asked to make deprived her of a benefit to which she was otherwise entitled.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge